Report oe Committee.
February 26th, 1827.
Mr. Mann, from the committee on privileges and elections, to whom was referred the petition of James McGlashan, praying to be admitted to a seat in this House in the place of John A. Bryan, the sitting member, from the county of Cattaraugus, reported: That the county of Cattaraugus is entitled to elect and return to this House one member; that it appears from a statement of the county canvassers, admitted to be correct, that at the last anniversary election three several candidates were voted for in said county for member of Assembly, to wit: the petitioner, James McGlashan, who liad six hundred and fifty-eight votes; John A. Bryan, the sitting member, who had six hundred and sixty-one votes, and Joseph McClure, who had three hundred and sixty-five votes.. In addition to the six hundred and fifty-eight votes given and canvassed for the petitioner, as aforesaid, he claims to have allowed one vote found in the Assembly ballot-box, in the town of Great Yalley, on which was written “ Jas. McGlash,” for Assembly, or “Jas. .McGlashan, for Sembly.” It was satisfactorily proved by the affidavit of Charles Ward, supervisor, and Ira Norton and Daniel Farrington, inspectors of election of said town, and Richard Green, one of the poll clerks (documents herewith submitted, marked “A ”), that an abbreviated or misspelled vote written in one of the forms above stated, supposed by them to have been intended for the petitioner, was found in the Assembly ballot-box, and rejected on account of some irregularity in the spelling of the surname or of the abbreviation of the Christian name. The deponents did not recollect with certainty in which of the forms above stated the name was written. Ira Norton thought it was *67 “ Jas. T®cG-lasb.” It was also proved by the said affidavits that this vote was in the hand-writing of James Green, an. elector of said town, and that it was the only written vote given for the petitioner in said' town. It was also proposed to prove by affidavit of James Green that he gave to the inspectors and saw placed in the Assembly ballot-box such an abbreviated written vote, and that he intended said vote for the petitioner.
The committee are of the opinion that to go beyond the ballot-box to ascertain or search for the intention of the voter would be setting a precedent leading to consequences dangerous in its application.
The committee therefore decide that the vote was properly rejected for uncertainty, and ought not to be allowed.
It was also proved by the affidavits of Howard Peck, supervisor, Nathan Follett, town clerk, and George Graham, an assessor, of the town of Yorkshire, there was. but one box for receiving votes of Governor and Assembly, which box was divided into two apartments by a partition; that on the morning of the last day of election, the box was placed upon the table in a different position than before, by ’.changing ends; that the inspectors' went on receiving, not aware of the altered situation of the box, and depositing the votes as if the box had remainedras on the former days, until they had received ten or eleven votes, and then discovered they had misplaced the votes taken that morning, by putting the Assembly ballots in the Governor apartment, and the Governor ballots in the Assembly apartment, and on discovering the mistake, made a minute On the poll lists, then changed ends of the box and proceeded correctly, and on canvassing •* the votes, the number so misplaced agreed with' the number of votes received that morning, and noted on the poll lists and were allowed. ""The petitioner contended that these six or seven votes found in the wrong box, ought not to nave been allowed to the said John A. Bryan.
The committee, in order to decide upon the admission or rejection „of the misplaced votes, in the town of Yorkshire, as well as other towns in this county, have perceived the necessity of adopting some general principle, by which they will be governed, in passing upon such votes. It will readily be admitted, that objections may be made to the application of any general rule, to a case of this description, and that the establishing of such rule is attended with difficulty. The committee, however, are of opinion, that when it clearly appears the error has occurred by the mistake of the inspectors, without the fault or carelessness of the voter, neither the elector or candidate ought *68 ' ' . . '* thereby to be deprived of bis rights, but that such error should be corrected. But iu case the error accrued from the negligence or fault of the voter, or where it did not appear affirmatively to have arisen from the mistake of the inspector, that it would hot be safe or proper to attempt to correct such errors or faults, and the committee have, therefore, adopted this rule as the least exceptionable criterion, in determining the admissibility of all such votes claimed on either side. In pursuance of this rule, therefore, the committee have decided that the six or seven votes misplaced in the' town of Yorkshire, by the mistake of the inspectors, were properly allowed by those inspectors to the sitting member.
It was also proved, by the affidavit of Ezra Canfield, inspector of Little Valley, marked II, that during the election, an elector offered a vote which he said was a Congress vote, and which was put in the Congress box; the elector immediately after observed and offered to swear that he had mistaken his vote, and put his Assembly vote which was for John A. Bryan, in the Congress box, whereupon the inspectors agreed that if one vote for John A. Bryan, for member of Assembly, should be found in the Congress box, it should be allowed to him ; and that on canvassing, one such vote for John A. Bryan was found in the Congress box, and was canvassed and allowed to said Bryan.
The petitioner contended, and the committee decided, that this vote ought not to have been allowed to said Bryan.
The petitioner then claimed to have allowed to him ten votes found in wrong boxes, and not counted to him on canvassing, and to show himself entitled to such votes he proved, by the affidavit of Benjamin Clark, one of the inspectors of the town of,Randolph, and marked B, that on canvassing the votes of that town one vote for James McGlashan, member of Assembly, was found in the Congress ballot-box; also one vote in the Governor ballot-box with the name of James McGlashan, member of Assembly, thereon ; also one vote in the Governor’s box with barely the name of James McGlashan thereon, without designating the office; also one for Timothy H. Porter, for member of Congress, in the Assembly box, and one vote in the same box for De Witt Clinton for Governor, which votes were returned as having been given for the offices distinguishing the boxes where they were respectively found, and of course the votes for the petitioner were not allowed to him as member of the Assembly on the canvass.
It was also proved, by the affidavit of Daniel S. Thorpe, marked *69 C, that in the town of Cold Spring, in canvassing, two votes were taken from the Congress box having; the name of James McGlashan thereon for member of Assembly; that one vote was taken from the Assembly box having the name of Timothy H. Porter for Congress thereon, which votes were not allowed, and that ninety-nine names appeared on-the Assembly poll list; and it further appeared, from the statement of the county canvass aforesaid, that sixty-four votes were allowed to the petitioner and thirty-two to John A. Bryan for member of Assembly, making ninety-six votes canvassed from said town for member of Assembly,
It was also proved, by the affidavits of the supervisor and two of the assessors of the town of Perrysburgh, marked D, that two votes for James McGlashan for Assembly, and one for John A. Bryan for member of Assembly, were found in the Congress ballot-box, and three votes for Timothy H. Porter, member of Congress, were found in the Assembly ballot-box, and that the number of names on each of the poll lists of the said two boxes agreed with the number of votes found in each of the boxes respectively, and that the votes so found in wrong boxes were not allowed.
It was also proved, by the affidavit of George A. S. Crocker, supervisor of the town of Oonewango, marked E, that in said town one hundred and fifty-one names appeared on the Assembly poll list, and one hundred and fifty ballots found in the Assembly ballot-box, of which one hundred and twenty-three ballots were for James McGlashan, and twenty-six ballots for John A. Bryan, respectively, for member of Assembly, and one ballot for Timothy II. Porter for member of Congress; also that one hundred and forty names were found on the Congress poll list and only one hundred and thirty-nine ballots'in the Congress ballot-box ; also that two votes were found in the electoral ballot-box for James McGlashan for member of Assembly, and that all votes found in the wrong box were rejected.
It was also proved by the inspectors return for the town of, Otto, and from an affidavit of John T. Perris, Yeni Plumb and Abel M. Butler, inspectors of election of said town, marked P, that on canvassing one vote for James McGlashan for member of Assembly was found in the Congress box and not allowed to said McGlashan.
The committee are of opinion that inasmuch as it does not appear how or by whose mistake the said ten votes claimed by the petition were placed in wrong boxes, the said votes were properly rejected and ought not to be allowed to- the petitioner.
*70 And the committee further report, that on the part and behalf of the sitting member, it appears the affidavit of the inspectors of election of the town of Great Yalley, marked I, that three votes in that town were found in the Congress box in these words “Assembly, John A. Bryan,” and an equal number of votes were found in the ■ Assembly ballot box for Timothy IT. Porter for member of Congress, also in the Assembly box a ballot was found on which the name of John A. Bryan appeared twice, and also a vote supposed to be intended for John A. Bryan, partly torn, on which the John was torn cross-wise of the name so that the words A. Bryan only were legible thereon, also that the poll lists and ballots agreed, all of which votes were rejected. It was also proved by the affidavit of Jeremiah York, an inspector of the town of Randolph, marked K, that on canvassing the votes in said town, two votes were found in the Assembly box rolled together in these words “Assembly, John A. Bryan,” which were immediately destroyed and not allowed, and that the poll list outnumbered the ballots exclusive of those, two votes by one.
It was also proved by the affidavit of the inspectors of the town of Ellicotville, marked L, that on canvassing the votes in said town one vote was found in the Governor ballot-box, in these words “Assembly John A. Bryan,” which vote was rejected. It appears, from the affidavits of Nicholas Berdine, Anson Gibbs and Abeliel U. Stebbins, also marked L, that said Nicholas Berdine, an elector in said town, presented a vote for John A. Bryan, which was put in the Governor box by mistake of the inspector; that he immediately offered another vote for John A. Bryan, which was put in the Assembly box'. It was also proved by the affidavit of the inspectors of election of Parmersville, marked M, that on canvassing the votes in that town, one vote was found in the Congress ballot-box in these words “Assembly, John A. Bryan,” and a vote in the Assembly box for Timothy IT. Porter, member of Congress, and that the poll lists and votes were even; all these votes were rejected, and not allowed in the canvass.
The sitting member claimed to be allowed eight votes for those above stated to have been rejected by the inspectors, and one other vote for a ballot proved to have been rejected in the town of Perrys-burgh, on account of its being found in the Congress ballot-box of that town ; in all nine in number. But the committee are of the opinion that the said votes were properly rejected by the inspectors, and *71 ought not to be allowed, with the exception of the vote found in the Assembly box, in the town of Great Yalley, whereon the name of John A. Bryan appeared twice. A majority of the committee have decided that that ballot ought to be allowed as one vote for the sitting member. They see no good reason why it should be placed on the same footing with two separate ballots folded together, as in the case of the votes in the town of Randolph. There is not the same, nor indeed any danger of their imposing two votes on the inspectors in th'e place of one.
The petitioner also offered to prove, by sundry affidavits marked N, that in the town of Farmersville the inspectors of election were friendly to the election of the sitting member, and that one of them made a small bet with an elector during election that said Bryan would be the successful candidate. Also, that after the poll was closed, the inspectors retired to a different room from that in which the votes had been taken, for the purpose of canvassing, and locked themselves therein, with but two or three others known to be partial to the election of the said Bryan, and continued therein, refusing admittance to those without until the}1" had finished canvassing the Assembly votes, when the doors were opened and the result proclaimed. Also, that during the election "in said town, one of the inspectors opened the Congress ballot-box and took therefrom a printed ballot and placed the same in the Assembly ballot-box. The last of these facts was proposed to be proven by the affidavits of .Solomon Curtis, an elector not belonging to the board of inspectors, and John D. Older, one of the poll clerks; and the affidavit of the said Solomon Curtis further stated that the ballot so removed from one box to the other had the name of John A. Bryan printed thereon.
On the part of the sitting member is proposed to prove, by several affidavits marked 0, that although the inspectors did canvass in a different room from the bar-room of the tavern where the votes were ‘ received, they did it publicly and fairly; that they were induced to retire from the said bar-room to avoid the noise, disorder and interruption to which they.would have been exposed had they not so removed; that the door of communication between said canvassing room and the bar-room might have been fastened, through the prudence of a constable whose duty it was to keep order, but that there were two other doors in said retiring room, opening to the street, which were not fastened, and through which spectators were entering *72 and departing at pleasure during the whole time they were canvassing to the number of from twelve to sixteen or more.
The petitioner contended that on account of such irregularities as he proposed to prove, the votes returned by the said town of Farmers-ville for the sitting member, which appear from the statements of tlxe county canvass above referred to to have been sixty-three, ought to have been destroyed and'not allowed to said Bryan.
The committee aremf opinion that, inasmuch as no corruption is imputed, this impropriety of conduct on the part of the inspectors, if fully proved', as proposed, ought not to disfranchise the electors of said town. As to the vote said to be transferred from the Congress to the Assembly box, in Farmersville, the committee are of opinion that if the proof offered would fully establish the fact that the vote was for John A. Bryan, it ought to be rejected; but as that proof is not satisfactory, the committee decide that it was improperly allowed.
In concluding this report, the committee add the following result:
That by rejecting one vote allowed to Mr. Bryan by the inspectors in Little Valley, and allowing one vote for him rejected in the town of Great Valley, the whole number of votes allowed to him remain the same as on the county canvass, to wit, six hundred and sixty-one ; and by rejecting all the votes claimed by the petitioner, his number will also remain the same as returned by the county canvassers, to wit, six hundred and fifty-eight, leaving a majority for Mr. Bryan of three votes; and, by allowing the votes rejected by the inspectors for each of the candidates, the sitting member will still have a majority of one. The committee therefore offer the following resolution:
Resolved, That the prayer of the petitioner ought not to be granted.
Ordered, That the said report be committéd to a committee of the whole House.
Ordered, That the usual number of copies of the said report be printed for the use of Legislature.
Assembly Journal, 1827, pages 670, 671, 672, 673, 674. Further proceedings, page 714.
Committee of the Whole. — 'James A. BRyan Retains his Seat.
Mcvroh 6th, 1827.
The House resolved itself into a committee of the whole, on the report of the committee of privileges and elections, on the petition *73 of James McG-lashan, of the county of Cattaraugus, praying to be admitted to a seat in this House, in the place of John A. Bryan, the sitting member, and after some time spent thereon, Mr. Speaker resumed the chair, and Mr. Hamilton, from the said committee, reported, that in proceeding on the said report, the committee had agreed to the resolution reported by the said committee, which he was directed to report to the House, and he read the same in his place and delivered it at the table, were it was again read, in the words following, to wit:
Resolved, That the prayer of the petitioner ought not to be granted.
Mr. Speaker put the question, whether the House would agree to the said resolution, and it was determined in the affirmative..
Ayes, 71. Hays, 13.
Assembly Journal; 1827, page 720.